Nicholson, C. J.,
delivered the opinion of the Court.
Madison Eichardson was engaged in agricultural pursuits in Jackson county, and was the head of a family. The only work beast he owned was a jackass, worth twenty dollars. He used this animal in his farming, operations. Asel Duncan, a Constable, levied an execution *221 on the jackass. Whereupon Richardspn brought his action of replevin before a Justice of the Peace, alleging that the defendant had seized and had in his possession, a certain Spanish horse, usually denominated a jack, of a black or dark color, of the value of twenty dollars; and claiming that his Spanish horse, or jack, was unlawfully taken from him, the same being the only "horse, mule or ox, that he owned. The Justice of the Peace decided against the plaintiff, on the ground that the law exempts from execution “a horse, mule or yoke of oxen,” and that as a jack was neither horse, mule or ox, he was not exempt from levy and sale. Upon appeal to the Circuit Court, the Circuit Judge charged the law as it was held by the Justice of the Peace; whereupon there was a verdict and judgment against the plaintiff, who appealed to this Court, under the pauper law.
We can not concur with the Justice of the Peace and the Circuit Judge, in their construction of the exemption law, as applicable to “a horse, mule, or yoke of oxen.” It is clear that this case comes directly within the reason and spirit of the law. The plaintiff was the head of a family, probably a large one. He was engaged in tilling the soil, and his little jackass, worth only twenty dollars, was the sole dependence of his family for plough-ing the earth, and making bread for his wife and children.
It is obvious that he is exactly the kind of citizen that the Legislature had in view when they declared that the wives and children of such honest hard-working tillers of the ground should not be reduced to starvation by allowing the creditor to seize the last horse, mule or ox. *222 Tbe generous object of the Legislature would be defeated if we should “stick' in the bark,” and declare that they intended by their legislation to exclude from its benefits all those heads of families who, either from choice or necessity, plowed jackasses instead of horses, mules or oxen. We are satisfied they intended to make no such invidious distinctions, either between citizens equally deserving, or work beasts equally useful. Nor are we required to do any great violence to the letter of the statute in holding that the case before us falls within the reason and object of the enactment. It was held by this Court, many years ago, that a person guilty of mule racing along a public road was indictable under the statute against horse racing. The decision rests upon the solid ground that the two offenses fell alike within the reason of the law. If, in a criminal case, it is allowable to hold that a mule is a horse, if he is used in racing along a big road, much more is it allowable to hold that a jackass, used for farming purposes, is either a horse, or mule, or ox. But we are not without high philological authority for construing the word “horse,” used in the statute, as including the “ass.” Mr. Webster, in his unabridged and illustrated dictionary, defines an ass to be “a quadruped of the genus equus — that is, equus asimos — having a peculiarly harsh bray, long stretching ears, and being usually of an ash color with a black bar across his shoulders. The tame or domestic ass is patient to stupidity, and slow.” Then the ass is a species of the genus equus, or horse. His value for agricultural purposes was one of the lucky developments of the late war. Some who resorted to the services of this species of horse, for such purpose, *223 from dire necessity, continue so to use bi'm, either from choice or continued necessity. We think those heads of families, engaged in agriculture, who use the ass or the jackass for such purposes, and not otherwise, are within both the letter and the spirit of the exemption law.
We reverse the judgment, and remand the cause for a new trial.